O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEBOOH BAGHOOMIAN,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CV 06-5231 (JCR)

MEMORANDUM OPINION
AND ORDER

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge.  Sebooh Baghoomian ("Plaintiff"), seeks review of the decision of Michael J. Astrue ("Defendant" or "Commissioner"), the Commissioner of the Social Security Administration, denying his application for disability benefits.

## I.　　PROCEEDINGS

On August 21, 2006, Plaintiff filed a Complaint seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB").  On October 24, 2006,

---

[1]  Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Defendant filed an Answer and served the certified Administrative Record ("AR").  On January 4, 2007, Plaintiff filed a Motion for Summary Judgment or Remand ("MSJ") and Motion for Filing New Evidence Under 42 U.S.C. § 405(g).  Defendant filed a Cross-Motion for Summary Judgment ("Cross-Motion") on February 5, 2007.  On February 15, 2007, Plaintiff filed a Reply to Defendant's Cross-Motion for Summary Judgment and In Support of Plaintiff's Motion for Summary Judgment.  On May 17, 2007, Plaintiff filed a Second Motion for Filing New Evidence pursuant to 42 U.S.C. § 405(g).  On June 7, 2007, Defendant filed an Opposition to Plaintiff's Second Motion for Filing New Evidence and Motion for Remand.  On June 13, 2007, Plaintiff filed a Reply to Defendant's Opposition to Plaintiff's Second Motion for Filing New Evidence and Motion for Remand.  Plaintiff subsequently filed a Third and Fourth Motion for Filing New Evidence on August 14, 2007, and August 31, 2007, respectively.  For the reasons stated below, Plaintiff's MSJ is DENIED, Defendant's Cross-Motion is GRANTED, and the decision of the Commissioner is AFFIRMED.

## II.   BACKGROUND

On July 15, 2004, Plaintiff, then age forty-four,[2] filed an application for disability benefits.  (AR 22, 70.)  Plaintiff alleged a disability onset date of September 30, 2003, on the basis of severe neck, left leg, arm, and lower lumbar pain.  (AR 34, 226, 230-31, 593.)   He further alleged that he suffered from post-traumatic stress disorder with depression.  (AR 441, 443, 448.)

After the application was denied initially on September 29, 2004, and again on reconsideration on December 27, 2004 (AR 39, 46), an administrative hearing was held before an Administrative Law Judge ("ALJ") on February 22, 2006.  (AR 22, 64, 567-600.)  Plaintiff

---

[2]  The Court notes that the records are replete with inconsistencies regarding Plaintiff's date of birth.  A copy of Plaintiff's purported birth certificate states that he was born on February 14, 1959 (AR 76), while other documents indicate that Plaintiff was born on February 4, 1959, (AR 34, 70), and February 14, 1960 (AR 573; Pl.'s Second Mot. for Filing New Evidence, Neurological Follow Up Evaluation by Russell, J. Shah, M.D. 1.)  At the ALJ hearing, the issue was clarified and confirmed by counsel that Plaintiff's actual date of birth is February 14, 1960. (AR 573.)

appeared with counsel and testified on his own behalf.  (AR 567-600.)

On March 20, 2006, the ALJ issued an opinion denying benefits based on his finding that Plaintiff had not been under a "disability," as defined by the Social Security Act.  (AR 33.) Plaintiff sought review of this decision before the Appeals Council.  (AR 17.)  On July 29, 2006, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner in this matter.  (AR 7.)  On August 21, 2006, Plaintiff timely filed the instant action, seeking judicial review of the denial of benefits by the Commissioner.  (Compl. 1.)

## III.   **DISPUTED ISSUES**

As reflected in the parties' cross-motions for summary judgment, the four Disputed Issues are as follows:

1.   Whether the ALJ made a proper credibility determination;

2.   Whether the ALJ accorded proper weight to the reports from treating and examining sources;

3.   Whether the ALJ failed to fully and fairly developed the record; and

4.   Whether the new evidence submitted to this Court supports a decision to remand under sentence six of 42 U.S.C. § 405(g).

(*See* Pl.'s MSJ 9; Def.'s MSJ 2-7.)

## IV.   **FIVE -STEP SEQUENTIAL EVALUATION TO DETERMINE DISABILITY**

### A.   **Initial Five-Step Analysis**

To be eligible for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 42 U.S.C. § 423 (d)(1)(A) (2007).

Disability claims are evaluated according to the five-step procedure described below. *See Bowen v. Yucker*, 482 U.S. 137 (1987); *Reddick*, 157 F.3d at 721; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995, *as amended* April 9, 1996); 20 C.F.R §§ 404.1520, 416.920 (2006).

**Step one:**  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.

**Step two:** Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

**Step three:** Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt P, App. 1 (hereinafter "the Listings")?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

**Step four:**  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

**Step five:**  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester*, 81 F.3d at 828 n.5.

If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  *Tackett*, 180 F.3d at 1098; 20 C.F.R. § 404.1520.  Claimants have the burden of proof at steps one through four of proving an inability to perform past relevant work, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  *Tackett*, 180 F.3d at 1098 and n.3.  If this burden is met, a *prima facie* case of disability is established and the burden shifts to the Commissioner at step five to establish that, considering residual functional capacity ("RFC")[3], age, education, and work

---

[3] RFC is what a claimant can still do despite existing "exertional" (*i.e*, strength-related) and "nonexertional" limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5-6 (9th Cir. 1989). Nonexertional limitations restrict ability to work without directly limiting strength, and include mental, sensory, postural, manipulative and environmental limitations.  *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993); *Cooper*, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c) (2007).

4

experience, the claimant can perform alternative work which is available in significant numbers.[4] *Tackett*, 180 F.3d at 1098, 1100; *Reddick*, 157 F.3d at 721; *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992); 20 C.F.R. §§ 404.1520, 416.920 (2006).

### B.   Additional Five-Step Sequential Evaluation for Mental Impairments

Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must supplement the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. *Maier v. Comm'n of Soc. Sec. Admin.*, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). The relevant regulations establish another five-step sequential evaluation procedure to be employed in evaluating mental impairments. *Id.* The procedure requires the evaluator to perform the following five steps:

> **Step 1:** Determine whether a mental impairment exists by recording pertinent symptoms and limitations;
>
> **Step 2:** Determine whether "certain medical findings which have been found especially relevant to the ability to work are present or absent;"
>
> **Step 3:** Determine whether the impairment is severe by rating the degree of functional loss resulting from the impairment;
>
> **Step 4:** Determine whether the impairment, or a combination of impairments, meet or equal a mental disorder listed in 20 C.F.R. [Part 404, Subpt. P, App. 1]; and
>
> **Step 5:** Complete a mental residual functional capacity assessment.

*Maier*, 154 F.3d at 914-15 (*citing* 20 C.F.R. § 416.920(a)).

When dealing with alleged mental disabilities, the inquiry at step three has two parts. In

---

[4] The Commissioner can meet this burden by reference to the Medical-Vocational Guidelines ("Grids") at 20 C.F.R. Part 404, Subpt P, App. 2, or by relying on vocational expert ("VE") testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576-77 (9th Cir. 1988)). If VE testimony is used, "the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock*, 240 F.3d at 1162-63.

the first part, (Part A), the ALJ must determine whether there is evidence to "medically substantiate the presence of a mental disorder." 20 C.F.R. Part 404, Subpt. P, App. 1 at § 12.00A. When making this initial determination, the ALJ can rely only on "medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings." *Id.* at § 12.00B; *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000).

In the second part, (Part B), the ALJ must determine whether the "severity" of the claimant's "functional limitations" are "incompatible with the ability to work." 20 C.F.R. Part 404, Subpt. P, App. 1 at § 12.00A; *Schneider*, 223 F.3d at 974. The ALJ makes this determination by ranking the severity of the claimant's deficiencies (*e.g.*, none, slight, moderate, marked, extreme) in four different categories (*e.g.*, daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). If the ALJ finds that a claimant's functional limitations are at the extreme or marked level in two of the four categories, then the claimant satisfies Part B [of the Listing]. *See* 20 C.F.R. Part 404, Subpt. P, App 1 at § 12.04B; *Schneider*, 223 F.3d at 975. A disability claimant must show that a medically determinable physical or mental impairment prevents the claimant from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. *Reddick*, 157 F.2d at 721; 42 U.S.C. § 423 (d)(1)(A).

## V.    **THE ALJ'S DECISION**

At the first step of the sequential evaluation process, the ALJ observed that Plaintiff had engaged in substantial gainful activity since the alleged onset date of his disability. (AR 32.) Next, at step two, the ALJ found Plaintiff suffered from "severe" medically determinable impairments of degenerative changes of the cervical spine, including stenosis, reduced lordosis and disc protrusions at C3-5, and reduced lordosis and degenerative changes of the lumbar spine. (AR 23, 32.) The ALJ did not find that Plaintiff's alleged post-traumatic stress disorder with depression were severe. The ALJ determined that Plaintiff's mental impairment was questionable. (AR 23.) At the third step, the ALJ found that Plaintiff's impairments did not meet or equaled any of the listed impairments set forth in 20 C.F.R., Pt. 404, Subpt P, App. 1.

(AR 33).

In the fourth step of his analysis, the ALJ weighed the medical evidence in determining Plaintiff's RFC to decide whether Plaintiff could perform past relevant work. (AR 25-30.) The ALJ concluded that Plaintiff has the RFC to "lift up to twenty-five pounds frequently, fifty pounds occasionally, without further significant physical limitations." (AR 26.) As to his mental impairment, Plaintiff was found to have "slight to moderate limitations in terms of relating to others beyond giving and receiving instructions, and slight to moderate limitations in the ability to influence others." (AR 26.) The ALJ also found that Plaintiff had no other significant psychiatric limitations. (AR 26.) In analyzing Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints, but did not find them credible. (AR 30, 33.) Having addressed Plaintiff's functional limitations, under step four, the ALJ concluded that Plaintiff could perform his past relevant work as an administrative assistant or construction superintendent in a light work capacity. (AR 33.) Having determined that Plaintiff could perform his past relevant work, the ALJ did not need to reach step five. Accordingly, Plaintiff was found not "disabled" as defined by the Social Security Act. (AR 33.)

**VI.   STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *See McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); *Tackett*, 180 F.3d at 1097; *Reddick*, 157 F.3d at 720.

Substantial evidence means "more than a mere scintilla" but less than a preponderance.

*Reddick*, 157 F.3d at 720; *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick*, 157 F.3d at 720; *see also Richardson*, 402 U.S. at 401. To determine whether substantial evidence supports a finding, this Court must review the administrative record as a whole and consider adverse as well as supporting evidence. *Reddick*, 157 F.3d at 720; *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## VII.   DISCUSSION

Plaintiff asserts three grounds for remand. Plaintiff first argues that the ALJ improperly evaluated his credibility; and second, the ALJ improperly rejected the opinion of his treating physician. Finally, in his third contention, Plaintiff argues that the ALJ violated his duty to develop the record. At the outset, the Court disagrees with each of Plaintiff's three contentions.

### A.   The ALJ Made a Proper Credibility Determination

In Disputed Issue One, Plaintiff essentially challenges the ALJ's credibility determination. In particular, Plaintiff avers that the ALJ failed to apply the excess symptom methodology to give sufficiently specific reasons for finding Plaintiff's subjective complaints of pain and psychological conditions to be not credible. (Pl.'s MSJ 9-14, Pl.'s Reply to Def.'s MSJ 1-2.) Defendant responds by claiming that the ALJ properly determined Plaintiff was not credible, based on the following reasons: (1) Plaintiff's numerous inconsistent statements; and (2) the objective medical evidence did not support Plaintiff's alleged limitations. (Def.'s MSJ 2-4.) For the reasons discussed herein, the Court concurs with Defendant.

The determination of subjective testimony under the excess symptom methodology involves a two-step process. First, the ALJ must determine if the plaintiff properly presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

1   1991) (en banc) (*reaffirming Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986)) ("*Cotton* test").  If

2   the plaintiff meets the *Cotton* test, and there is no evidence of "malingering," then at the second

3   step the ALJ must make specific findings stating clear and convincing reasons for rejecting the

4   subjective testimony.  *See Reddick*, 157 F.3d at 722; *Lester*, 81 F.3d at 834.

5           An ALJ's credibility determination should be given "great weight."  *Cansio v. Shalala*,

6   833 F. Supp. 764, 767 (9th Cir. 1993) (*citing Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir.

7   1986)).  Furthermore, an ALJ cannot be required to believe every allegation made by a plaintiff.

8   *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).  "An individual's statement as to pain or other

9   symptoms shall not alone be conclusive evidence of disability as defined in this section; there

10  must be medical signs and findings . . . which show the existence of a medical impairment . . .

11  which could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C.

12  § 423(d)(5)(A); *see Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989); *Fair*, 885 F.2d at

13  600.

14          Here, although Plaintiff presented evidence of an impairment that could cause the

15  symptoms alleged as required under step one, the ALJ found evidence of malingering.

16  According to the ALJ's ultimate findings, he noted that Plaintiff produced three different invalid

17  Minnesota Multiphasic Personality Inventories ("MMPI") which indicated that Plaintiff was

18  "exaggerating and overstating symptoms" with deliberate malingering.  (AR 24, 352, 450, 477-

19  78.)  In particular, the ALJ pointed to the first MMPI evaluation dated June 23, 2004, wherein

20  William Joseph, Ph.D. ("Dr. Joseph"), a qualified medical examiner, concluded that on the Test

21  of Memory Malingering, both trials revealed evidence of "malingering a memory problem" and

22  that the extreme elevation on the MMPI-2 scales suggested that Plaintiff "attempted to over-

23  report or exaggerate psychological problems."  (AR 352.)  Likewise, in a comprehensive medical

24  and psychological evaluation dated June 17, 2005, Plaintiff's treating psychiatrist, Dr. Thomas

25  A. Curtis ("Dr. Curtis"), found Plaintiff's high score on the Negative Impression Scale "could

26  correlate with conscious or deliberate malingering."  (AR 450.)  Plaintiff's third invalid MMPI

27  score was conducted on June 22, 2005, by Dr. Gerald Windler ("Dr. Windler"), an agreed

28  psychiatric consultant, who also found Plaintiff's test response an "attempt to 'fake bad' or

9

malinger in order to accomplish some specific objective."  (AR 477-78.)

Even though the record showed affirmative evidence of Plaintiff's malingering, the ALJ proceeded with step two, and made specific findings stating clear and convincing reasons for rejecting Plaintiff's subjective testimony.  *See Reddick*, 157 F.3d at 722; *Lester*, 81 F.3d at 834. The ALJ gave a number of specific reasons for rejecting Plaintiff's subjective complaints of impairment, primarily based on Plaintiff's numerous inconsistent statements, including, *inter alia*:

1.  Plaintiff claimed that he was born in both Lebanon and Iran;

2.  Plaintiff reported that his education consisted of both an Associate's Degree and a Bachelor of Arts degree in business, but also testified on other occasions that his education consisted of an Associate's Degree with some additional course work;

3.  Plaintiff admitted to being arrested for voyeurism, but also denied ever being arrested;

4.  Plaintiff reported being assaulted, but his account of what transpired varied widely;

5.  Plaintiff gave inconsistent reports regarding his work experience, claiming at various times to have been a "personnel manager," "recruiter," and a "enumerator for the Census Bureau;"

6.  Plaintiff testified at the hearing before the ALJ that prior to his alleged onset date of disability, he was in excellent health, yet the record confirmed that he had filed three prior applications for disability benefits;

7.  Plaintiff's account of the cause and nature of his father's death has varied;

8.  Despite Plaintiff's claim that he is "mostly confined to bed" due to his infirmities, he has not made such a claim to any medical or psychiatric source;

9.  Despite Plaintiff's reported loss of sensation and back and neck pain, it is not supported by any known MRI study or diagnostic testing; and

10. Plaintiff's three separate invalid MMPI tests suggests over-reporting and exaggeration.

1  (AR 30-31.)

2      The ALJ's reasons for rejecting Plaintiff's complaints are essentially premised on the

3  theory that Plaintiff's subjective complaints are both internally inconsistent and inconsistent with

4  other evidence in the record.  The ALJ's reasons satisfy the clear and convincing requirement for

5  rejecting Plaintiff's credibility.[5]  *See Light v. Soc. Sec. Admin*, 119 F.3d 789, 792 (9th Cir. 1997)

6  (*citing Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("[i]n weighing a claimant's

7  credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

8  testimony or between his testimony and his conduct, his daily activities, his work record, and

9  testimony from physicians and third parties concerning the nature, severity, and effect of the

10  symptoms of which he complains"); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th

11  Cir. 2002) (the ALJ may properly consider *inter alia* "'testimony from physicians . . .

12  concerning the nature, severity, and effect of the symptoms of which [claimant] complains'"; and

13  may properly rely on inconsistencies either in the claimant's testimony or between the claimant's

14  testimony and his conduct, daily activities, and work record); *Morgan v. Comm'r of Soc. Sec.

15  Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (the ALJ may properly rely on conflict between the

16  claimant's testimony of subjective complaints and objective medical evidence in the record);

17  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (the ALJ may properly rely on weak

18  objective support, lack of treatment, and helpful medication to reject a plaintiff's pain

19  testimony); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (upholding the ALJ's

20  credibility determination where the claimant had alleged a limitation "disparate from that

21  observed by the consultative examiner"); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)

22  (noting that "a claimant's self-serving statements may be disregarded to the extent they are

23  unsupported by objective findings").

24      Accordingly, the ALJ gave clear and convincing reasons, supported by the record, for

25  _____

26      [5]  As mentioned previously, having found affirmative evidence of Plaintiff's malingering,
   the ALJ only needed to find substantial evidence in the record on which he properly could rely to

27  make his findings and decision.  Nonetheless, the ALJ continued with step two, and made
   specific findings stating clear and convincing reasons for rejecting Plaintiff's subjective

28  complaints.

1    determining Plaintiff was not credible.

2        **B.     The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Physician**

3        In Disputed Issue Two, Plaintiff contends that the ALJ improperly rejected the opinion of

4    his treating psychiatrist, Dr. Curtis, in collaboration with psychologist Patricia Hesterly, Ph. D.

5    ("Dr. Hesterly") on Plaintiff's post-traumatic stress disorder diagnosis.  (Pl.'s MSJ 14-15.)  The

6    Court disagrees with Plaintiff's contention.

7        Although the treating physician's opinion is entitled to great deference, it is "not

8    necessarily conclusive as to either the physical condition or the ultimate issue of disability."

9    *Morgan*, 169 F.3d at 600.  "When there is conflicting medical evidence, the [ALJ] must

10   determine credibility and resolve the conflict."  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

11   Cir. 1992).  The ALJ may reject a treating physician's opinion in favor of a conflicting opinion

12   by another doctor if the ALJ makes findings setting forth "specific and legitimate reasons"

13   supported by substantial evidence in the record.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th

14   Cir. 2001) (*citing Reddick*, 157 F.3d at 725); *Lester*, 81 F.3d at 830.  "The opinions of non-

15   treating or non-examining physicians may also serve as substantial evidence when the opinions

16   are consistent with independent clinical findings or other evidence in the record."  *Thomas*, 278

17   F.3d at 957.  In addition, the ALJ need not accept the opinion of any physician, including a

18   treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

19   findings.  *Matney*, 981 F.2d at 1019.

20       The opinions at issue here are those reflected in the Curtis Psychiatric Clinic's

21   "Extraordinarily Complex Comprehensive Medical-Legal Evaluation and Permanent and

22   Stationary Report with Psychological Test Results" under Section XII entitled "Psychiatric

23   Diagnoses" that Dr. Curtis completed in collaboration with Dr. Hesterly, on June 17, 2005.  (AR

24   458, Pl.'s MSJ 14-15.)  The ALJ, in a detailed discussion, rejected Dr. Curtis and Dr. Hesterly's

25   opinions, stating:

26               [Dr. Curtis'] opinions are largely unfounded and lack substantial

27               merit on their own right.  To begin, the claimant produced not one,

28               but three, different invalid MMPI inventories . . . . Each of these tests

indicates that the claimant was exaggerating and overstating symptoms . . . .  Even Dr. Curtis, himself, acknowledged that the claimant produced an invalid MMPI inventory during his testing, including evidence of malingering . . . .  His analysis consists essentially of discussing test scores that he acknowledges are not reliable.  In fact, at one point he contradicted himself claiming the claimant's MMPI actually presented an 'accurate and valid presentation of true psychological symptoms,' apparently ignoring the test scores themselves and his earlier conclusion that the test was invalid . . . .  Further, while he claims that the claimant has marked limitations in concentration persistence and pace, one would be hard-pressed to find clinical evidence of this in his report.  The claimant was able to complete the MMPI and other testing without difficulty.  In addition, he was able to recollect items after a few minutes, was fully oriented and had no problems performing serial sevens . . . .  Likewise, while Dr. Curtis claims that the claimant also has marked limitations in social functioning, there is no clinical evidence that he had any significant difficulty associating with Dr. Curtis, his staff or anyone else.  According to Dr. Curtis, the claimant was initially defensive and guarded, but opened up once rapport was established . . . .  This simply is not indicative of marked limitations in social functioning.  In addition, not only do Dr. Curtis's clinical findings fail to support his conclusions, he provided no treatment records, or other evidence supporting his opinions.  In fact, he produced no treatment notes, whatsoever.  When this is considered, in addition to the fact that Dr. [Gerald] Windler, the agreed consultant, and the State Agency consultant, uninvolved with the workers compensation litigation, do not remotely support [Dr. Curtis'] conclusions, I must

13

1   conclude that Dr. Curtis's (sic) assessment is unsubstantiated.

2   (AR 24-25.)

3   Contrary to Plaintiff's representation, the ALJ properly evaluated Dr. Curtis and Dr.

4   Hesterly's opinions.  In determining Plaintiff's mental and emotional limitations, the ALJ

5   correctly relied on the opinions of Dr. Windler, the agreed psychiatric consultant, and Dr. Paul

6   Balson ("Dr. Balson"), the reviewing state agency physician.  The ALJ's reliance on these

7   opinions is supported by substantial evidence within the record.

8   On June 22, 2005, Dr. Windler examined Plaintiff.  (AR 24, 468-85.)  At this

9   examination, Plaintiff complained of, among other things, lack of memory and concentration,

10  coupled with "flashbacks" and anxiety associated with an assault that occurred in 2003.  (AR

11  473.)  Based on Plaintiff's interview, Dr. Windler noted that Plaintiff "was oriented to time,

12  place, and person," and his memory for both "recent and remote events appeared to be intact."

13  (AR 476.)  He indicated that Plaintiff presented his narrative in a "cohesive manner, with

14  sufficient detail and remained mostly serious throughout the examination."  (AR 475.)  Dr.

15  Windler also found Plaintiff's "mental status examination did not reveal any disorientation or

16  confusion."  He further reported that the three invalid MMPI tests suggested that Plaintiff had a

17  "tendency to overemphasize problems" (AR 481) and "exaggerate his symptoms."  (AR 482.)

18  In light of his findings, Dr. Windler diagnosed Plaintiff with post-traumatic stress

19  disorder with depression.  (AR 480.)  Dr. Windler concluded that Plaintiff's mental impairments

20  were very slight to moderate in all areas of basic work related mental functioning, including the

21  ability to comprehend and follow instructions, perform complex or varied tasks, and to accept

22  and carry out responsibilities.  (AR 24, 482-83.)  Dr. Windler's opinion was correctly relied

23  upon by the ALJ.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (where treating

24  physician's opinion is contradicted by nontreating physician's opinion that is supported by

25  independent clinical findings, the nontreating physician's opinion may constitute substantial

26  evidence for discrediting the treating physician's opinion).

27  Dr. Windler's opinion is corroborated by the opinion of the reviewing state agency

28  physician, Dr. Balson.  (AR 420-32.)  On August 31, 2004, Dr. Balson concluded that Plaintiff's

14

mental limitations were mild to moderate in terms of relating to others and his ability to carry out detailed instructions (AR 408-09, 430), and slight to mild in terms of carrying out daily activities and maintaining concentration, persistence, and pace (AR 430).  Dr. Balson concluded that Plaintiff's impairments had no other significant psychiatric impact.  (AR 408-09, 430-31.)

Other substantial evidence within the record supported the opinions of both Drs. Windler and Balson.  Plaintiff's first psychiatric evaluation by Marylin Calzadilla ("Dr. Calzadilla") on January 6, 2004, found that Plaintiff was experiencing a major depressive episode, generalized anxiety, and post-traumatic stress, but concluded that his long term prognosis was "good."  (AR 291.)  The psychiatric notes indicated that Plaintiff discontinued taking psychogenic medication because of concerns about addictions, and did not receive any specialized psychiatric care immediately after Dr. Calzadilla's initial evaluation.  (AR 344.)

On June 23, 2004, Plaintiff was next evaluated by Dr. Joseph.  (AR 363-88.)  Dr. Joseph performed a series of psychological tests which revealed normal range IQ, and "no evidence of an organic brain disorder, nor was malingering demonstrated."  (AR 377-79.)  Dr. Joseph performed other tests which showed Plaintiff was in the normal range for psychosocial activity, but demonstrated evidence of defensiveness, constriction, and inhibition.[6]  (AR 380.)

Although Dr. Curtis acknowledged that Plaintiff had produced an invalid MMPI-2 test, which suggested deliberate malingering (AR 352, 450), Dr. Curtis contradicted his finding by later concluding within the same report that Plaintiff's MMPI-2 presented an "accurate and valid presentation of true psychological symptoms."  (AR 456.)

Collectively measured, the medical evidence furnished substantial evidence for the ALJ's rejection of Dr. Curtis and Dr. Hesterly's opinions.  Therefore, the foregoing makes clear that the ALJ properly evaluated the medical evidence and set forth "specific and legitimate reasons" for rejecting the treating physicians' opinion.  *Rollins*, 261 F.3d at 856.

---

[6]  As discussed in further details below, despite the fact that Plaintiff produced his first invalid MMPI test, Dr. Joseph nonetheless diagnosed Plaintiff with post-traumatic stress disorder.  (AR 382; *see infra* Part VII.C at 16.)

### C.    The ALJ Satisfied His Duty to Fully and Fairly Develop the Record

The gravamen of Plaintiff's contention in Disputed Issue Three is that the ALJ did not adequately further develop the record under 20 C.F.R. § 404.1512(e) because he failed to seek additional evidence from Drs. Curtis and Joseph, when the medical information was inadequate to determine whether Plaintiff was disabled.  (Pl.'s MSJ 15-21.)  Plaintiff essentially argues that the ALJ had a duty to further develop the record where the ALJ noted that Plaintiff's post-traumatic stress disorder with depression diagnosis was "questionable" (Pl.'s MSJ 17; AR 23), or where Dr. Curtis' opinion "lacked basic indicia of reliability" (Pl.'s MSJ 18; AR 24).  Plaintiff also challenges the ALJ's rejection of Dr. Joseph's finding of temporary total disability.  (Pl.'s MSJ 19; AR 27)  In addition, Plaintiff alleges that the ALJ failed to further develop the record when he generally concluded that "consistent objective evidence of significant back impairments remain absent." (Pl.'s MSJ 20; AR 29.)  In opposition, Defendant argues that the ALJ was under no duty to develop the record further because the record was adequate for proper evaluation of the evidence, as supported by the ALJ's rejection of the doctors' findings on other grounds. (Def.'s MSJ 6-7.)  For the foregoing reasons, this Court agrees with Defendant.

The ALJ has an independent duty to fully and fairly develop the record in a social security case.  42 U.S.C. § 423(d)(5)(b); 20 C.F.R. § 404.1512(d)-(e); *Tonapetyan*, 242 F.3d at 1150.  This duty persists even where the claimant is represented by counsel and is more pronounced where the claimant is represented by a lay person or may be mentally ill.  *Smolen*, 80 F.3d at 1288; *Tonapetyan*, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, only ambiguous evidence, or the ALJ's own finding that the record is inadequate, triggers the ALJ's duty to gather additional information.  *Id.*; *see also Thomas*, 278 F.3d at 958 (Where the ALJ did not make a finding that the medical record was inadequate to make a disability determination, the duty to develop the record is not triggered.)

Here, the ALJ's duty to further develop the record was not triggered.  As an initial matter, the Court finds Plaintiff's allegation that the ALJ failed to accurately summarize the medical evidence and Plaintiff's own testimony without merit.  (Pl.'s MSJ 9, 16.)  The ALJ's opinion reflects an accurate and thorough discussion of every physician's report contained within

1   the record.  (*See* AR 22-33.)

2          As to Dr. Joseph, the ALJ acknowledged Dr. Joseph's finding that Plaintiff was

3   "temporarily totally disabled."  (AR 27.)  However, the ALJ noted that Dr. Joseph's diagnosis

4   was rendered "fundamentally flawed" by his failure to meaningfully address the issue of the

5   reliability of Plaintiff's presentation and to consider Plaintiff's invalid MMPI test.  (AR 27.)

6   This Court notes that the ALJ is charged with determining disability within the context of the

7   Social Security Act.  20 C.F.R. § 404.1527(e)(1).  Thus, the ALJ was not required to accept Dr.

8   Joseph's determination of "temporarily totally disabled" as a finding that Plaintiff met the

9   disability requirements under the Social Security regulations.  Moreover, the fact that Dr.

10  Joseph's findings were inconsistent with the later, more detailed evidence of record from other

11  examining physicians, including Drs. Windler and Balson, is a valid reason for rejecting Dr.

12  Joseph's findings as to the ultimate issue of Plaintiff's disability.  20 C.F.R. § 404.1505(a);

13  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

14         Although Plaintiff generally maintains that the ALJ should have re-contacted his treating

15  physicians or at least have ordered a consultative examination to further determine the extent of

16  Plaintiff's physical and mental impairments, the Court notes that the duty to re-contact a treating

17  source or have the claimant undergo a consultative examination arises only when the evidence of

18  record is insufficient or inadequate for the ALJ to make a disability decision.  *See* 20 C.F.R. §

19  404.1512(e)-(f); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here, the Court

20  concurs with Defendant that the record was sufficient and adequate in that it contained

21  substantial evidence on which the ALJ properly could rely to make his findings and decision.

22  *See Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may

23  also serve as substantial evidence when the opinions are consistent with independent clinical

24  findings or other evidence in the record."); *see also Tidwell*, F.3d at 602 (holding that the ALJ

25  satisfied any duty to develop the record by requesting additional records from claimant and her

26  counsel, and by keeping post-hearing record open for supplemental medical evidence).  In the

27  present case, the ALJ's opinion was rendered only after considering the diagnoses, treatment,

28  observations provided by medical sources, medical records, and Plaintiff's own subjective

symptoms.  *See* Social Security Ruling ("SSR") 96-5p;[7] 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1527(e)(2).  Thus, the ALJ did not have a duty to further develop the record because he determined the evidence in the record was not ambiguous or inadequate for him to rely upon in order to reach a valid decision.  *Thomas*, 278 F.3d at 958.

Moreover, the record reflects that the ALJ afforded Plaintiff's counsel the opportunity to ask questions at the February 22, 2006, administrative hearing.  In response to his counsel's examination, Plaintiff testified, in detail, about his past and current physical and mental condition, medical care and medications, and limitations.  (*See* AR 582-596.)  Plaintiff's counsel then stated that he had no further questions.  (*See* AR 596).  After the ALJ examined Plaintiff about his physical and mental condition prior to the July 2003 assault, Plaintiff's counsel reexamined Plaintiff regarding his past work history and psychiatric treatment in the late 1990's, but soon after stated that he had no further questions.  (*See* AR 597-98.)  At no time did Plaintiff's counsel assert that the record was insufficiently developed, or identify further medical records that were available for review.  Nor did he request that the record be left open for the submission of additional medical records.  Nevertheless, at the conclusion of the hearing, the ALJ left open the possibility for further development of the record.  (AR 600.)

Therefore, for the reasons discussed above, the Court finds that the ALJ sufficiently developed the record.

**D.      Plaintiff's Newly Submitted Evidence Does Not Warrant Remand**

Plaintiff submitted four Motions for Filing New Evidence in the instant case.  Plaintiff contends that the evidence submitted after the ALJ's decision supports the request for a sentence four remand, as it does for a sentence six remand.  Specifically, in his First and Second Motion for Filing New Evidence, Plaintiff submitted, *inter alia*, a neurological evaluation report by Russell J. Shah ("Dr. Shah"), dated May 3, 2007.  (Pl.'s Mot. for Filing New Evidence 2-4; Pl.'s Second Mot. for Filing New Evidence 1-3.)  In Plaintiff's Third Motion for Filing New

---

[7] Social Security Rulings are binding on ALJs.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

Evidence, he submitted a July 31, 2007, "Treating Physician's Final P&S Report Addendum with Sleep Study Impairment Addition" by H. Vincent Mitzelfelt ("Dr. Mitzelfelt"). (Pl.'s Third Mot. for Filing New Evidence 1-3, Ex. I.a.) Finally, Plaintiff submitted a July 20, 2007, "ML 104 Updated Extraordinarily Complex Comprehensive Medical-Legal Evaluation and Permanent and Stationary Report with Psychological Test Results," performed by Dr. Curtis. (Pl.'s Fourth Mot. for Filing New Evidence 1-3, Ex. 1.a.)

Plaintiff claims that the new information is material, relevant and likely to change the outcome of the case. (Pl.'s Second Mot. for Filing New Evidence 3; Pl.'s Third Mot. for Filing New Evidence 3; Pl.'s Fourth Mot. for Filing New Evidence 3.) Further, Plaintiff argues that he has good cause for not having incorporated the new evidence into the instant administrative record because the reports were not written until after the ALJ's decision. (Pl.'s First Mot. for Filing New Evidence 3-4; Pl.'s Second Mot. for Filing New Evidence 2; Pl.'s Third Mot. for Filing New Evidence 2; Pl.'s Fourth Mot. for Filing New Evidence 31) For the foregoing reasons, the Court finds Plaintiff's contention unavailing.

A case may be remanded to the Commissioner for further consideration pursuant to Sentence Six of 42 U.S.C. § 405(g) "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See* 42 U.S.C. § 405(g)(sentence six); *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984). To be material, the new evidence must bear directly and substantially on the matter in issue, and there must be a real possibility that the new evidence would have changed the outcome if it had been before the ALJ. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (as amended); *Cotton*, 799 F.2d at 1408; *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

The good cause requirement is satisfied if new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his claim has been denied. *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) (*citing Key*,

1   754 F.2d at 1551).  The claimant must show good cause for not seeking the report prior to the

2   denial of his claim.  *Id.*  To demonstrate good cause, the claimant must establish that the new

3   evidence was unavailable earlier.  *Mayes*, 276 F.3d at 463.

4        Here, the Court concurs with Defendant that Plaintiff has failed to make the requisite

5   showing of good cause.  (Def.'s Opp'n Pl.'s Second Mot. for Filing New Evidence 3-4.)  As a

6   preliminary matter, the three newly submitted reports and evaluations were performed more than

7   one year after the ALJ's March 20, 2006, hearing decision.  Plaintiff offers no reason why he had

8   not solicited this information from Drs. Shah, Mitzelfelt, and Curtis prior to the hearing before

9   the ALJ.  The obvious explanation is that when Plaintiff failed to succeed on his disability claim,

10  he sought out new medical opinions from Drs. Shah and Mitzelfelt, and new findings from Dr.

11  Curtis, all of whom might better support his position.  The "good cause" requirement would "be

12  meaningless if such circumstances were sufficient to allow introduction of new evidence."

13  *Allen*, 726 F.2d at 1473; *Clem*, 894 F.2d at 332 ( merely obtaining a more favorable report after a

14  claim has been denied is insufficient to establish good cause).  Accordingly, Plaintiff has alleged

15  no facts to show good cause as to why these evaluations were not obtained until over a year after

16  the administrative hearing.  *Key*, 754 F2d at 1551.

17       Moreover, the Court notes that none of the three reports, including Dr. Shah's

18  neurological examination report, Dr. Mitzelfelt's permanent and stationary report, and Dr.

19  Curtis' psychological evaluation are new evidence that are based on "a new technology that was

20  previously unavailable."  *Wainwright v. Sec'y of Health & Human Servs.*, 939 F.2d 680, 683 (9th

21  Cir. 1991) (finding good cause as a basis for remand for failure to submit evidence earlier

22  because the new evidence, an MRI scan, became "available due to improvements in

23  technology").  In fact, the ALJ's review of the administrative records were replete with

24  numerous neurological and psychiatric examinations at the time the ALJ made his determination.

25  (*See, e.g.,* AR 218-25, 230-37, 294-303, 310-17, 363-88; 438-85, 516-21.)  The Court further

26  conclude that the allegedly "new" neurological and psychiatric evaluation reports are at best

27  cumulative of the reports which already are a part of the record.  (*See, e.g.,* AR 218-25, 230-37,

28  294-303, 310-17, 363-88; 438-85, 516-21.)  Thus, the "new" report does not qualify as material,

and are not considered herein.

### **ORDER**

For all the foregoing reasons, IT IS ORDERED that: (1) Plaintiff's Motion for Summary Judgment is DENIED; (2) Defendant's Cross-Motion for Summary Judgment is GRANTED; (3) Plaintiff's First, Second, Third, and Fourth Motion for Filing New Evidence is DENIED; and (4) Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  The Clerk of the Court shall serve copies of this Order and Judgment on counsel for both parties.

DATED: September 24, 2007

_____
JOHN C. RAYBURN, JR.
UNITED STATES MAGISTRATE JUDGE

21